**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No.: 19-133 (KSH) |
| v. | |
| JUSTIN HUNTINGTON, *Defendant*. | **OPINION** |

### I. Introduction

Defendant Justin Huntington has brought an application for compassionate release. (D.E. 26.) The Federal Public Defender declined to provide representation (D.E. 28), and the government filed its opposition on October 14, 2020. (D.E. 30.) At the Court's direction, the government supplemented its opposition with Huntington's medical records from the Bureau of Prisons (BOP). (D.E. 32.) Having considered Huntington's motion, the government's opposition, and the medical records supplied by the government, the Court decides this matter without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer,* 573 F.3d 151, 154 (3d Cir. 2009). The motion will be denied.

### II. Background

On February 21, 2019, Huntington pleaded guilty to a two-count information charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c). On June 26, 2019, he was sentenced to 41 months' imprisonment on each charge, to run concurrently, followed by three years of supervised release. (D.E. 21.) Huntington is incarcerated at FCI Allenwood Low and his projected release date is June 25, 2021. (D.E. 30.)

1

On September 10, 2020, Huntington filed a motion seeking a reduction in sentence on compassionate release grounds based on the COVID-19 pandemic, his asserted medical conditions, *i.e.*, obesity and asthma, and the conditions of confinement at FCI Allenwood Low and correctional facilities generally. (D.E. 26.)  In opposing, the government argues that Huntington has not demonstrated extraordinary and compelling reasons for a sentence reduction, insofar he did not substantiate his asserted medical conditions and his generalized fear of contracting the virus is an insufficient basis for the relief sought.  The government further argues that consideration of the sentencing factors under 18 U.S.C. § 3553(a) does not support compassionate release in this case.

### III.     Legal Standard

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances.  *In re Morris*, 345 F. App'x 796, 797-98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)).  Relevant here, 18 U.S.C. § 3582(c)(1) provides as follows:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> [. . .]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The United States Sentencing Commission's policy statement permits a court to reduce a term of imprisonment under § 3582(c)(1)(A) where extraordinary and compelling reasons warrant the

reduction, the defendant is not a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g), and release would comport with consideration of the § 3553(a) factors. U.S. Sent'g Guidelines Manual ("USSG") § 1B1.13 (U.S. Sent'g Comm'n 2018); *see also United States v. Moore*, 2020 U.S. Dist. LEXIS 132220, at *4 (D.N.J. July 27, 2020) (McNulty, J.); *United States v. Cantatore*, 2020 U.S. Dist. LEXIS 89949, at *4 (D.N.J. May 21, 2020) (Salas, J.).

### IV. Discussion

#### A. Administrative Exhaustion

As the Third Circuit has explained, "[a] prisoner may file a motion for compassionate release with the sentencing court 'after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf **or** the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, **whichever is earlier**." *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). The record shows that Huntington applied to the warden of FCI Allenwood Low on August 8, 2020, for compassionate release, citing asthma and obesity. (D.E. 26, at 12.) The warden denied the request on August 19, 2020. (*Id.* at 13.) Huntington's motion is therefore properly before the Court.

#### B. Compassionate Release

##### 1. Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to define the meaning of the statutory term "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t). The application notes to the Sentencing Commission's relevant policy statement state that extraordinary circumstances exist in specified circumstances involving the defendant's medical condition, age, or family circumstances. USSG § 1B1.13, Application Note 1(A)-(C). They also contain a catchall provision. *See id.* at Application Note 1(D) ("As determined by the Director of the Bureau of

Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."). Here, Huntington has invoked medical conditions as the basis for his request. Noting the threat of COVID-19 in the prison environment, he also cites the catchall provision as a basis for release.

A medical condition may give rise to extraordinary and compelling reasons where the defendant is:

>   (I)   suffering from a serious physical or medical condition,
>
>   (II)  suffering from a serious functional or cognitive impairment, or
>
>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, Application Note 1(A)(ii). As relevant here, Huntington must show that he is "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care" in the correctional facility environment, and that he is not expected to recover from the condition.

Although this policy statement has not been updated since the passage of the First Step Act and, as such, addresses compassionate release motions brought by the BOP rather than by the defendant personally, it remains "helpful guidance" in determining a defendant's eligibility for such relief while not constraining the Court's "independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)." *United States v. Alexander*, 2020 U.S. Dist. LEXIS 85609, at *6-7 (D.N.J. May 15, 2020) (Wolfson, J.) (quoting *United States v. Rodriguez*, 2020 U.S. Dist. LEXIS 58718, at *9-10 (E.D. Pa. Apr. 1, 2020) (internal quotation marks omitted)).

Practically speaking, applying the policy statement in this context involves assessing the record evidence of Huntington's medical conditions and the likelihood he will contract COVID-19 in the institution in which he is incarcerated. *See Moore*, 2020 U.S. Dist. LEXIS 132220, at *7. The medical records supplied to the Court reflect no current asthma diagnosis or symptoms; instead, they indicate that Huntington "outgrew" childhood asthma and no longer suffers from it. (*See, e.g.*, D.E. 32-2, at 5, 7, 13, 57; D.E. 32-1, at 14.) They further reflect that Huntington characterized his asthma as "resolved," and that he could not recall when he last needed an inhaler or medication. (D.E. 32-2, at 63.) But even assuming *arguendo* that Huntington does have asthma, the Centers for Disease Control (CDC) classifies that condition as one that "might" present an increased risk of severe illness from the virus, as distinguished from conditions that when individuals have them, they "are" at increased risk of serious illness from the virus. *See* CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (page last updated December 1, 2020) (last visited December 28, 2020).

Huntington's records do, however, reflect a body mass index (BMI) of 32.7 as of September 3, 2020, which places him in the obese range. (*See* D.E. 32-1, at 8-9.)[1] The CDC classifies this condition as one that increases a person's risk of severe illness from the virus, and courts in this district and around the country have looked to the CDC's classification of conditions in assessing whether extraordinary and compelling reasons exist in the context of compassionate release motions brought based on COVID-19. *See, e.g.*, *United States v. Hynes*, 2020 U.S. Dist. LEXIS 190548, at *7 (D.N.J. Oct. 14, 2020) (Sheridan, J.); *United States v. Dent*, 2020 U.S. Dist. LEXIS 147397, at *10 (E.D. Mich. Aug. 17, 2020).

---

[1] Obesity is defined as a BMI of at least 30 kg/m$^2$ but less than 40 kg/m$^2$. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (page last updated December 1, 2020) (last visited December 28, 2020).

As previously noted, at this step the Court also considers the likelihood of the defendant contracting COVID-19 at the institution in which he is incarcerated. As of the date of this writing, FCI Allenwood Low reports 136 active inmate cases and 9 active staff cases; 45 inmates and 2 staff have recovered. BOP, COVID-19 Coronavirus, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited December 28, 2020). This is a significant increase from the 57 positive inmate cases the government reported in its December 15, 2020 submission, and represents 14.8% of the current inmate population. (*See* D.E. 32, at 2 n.2 (reporting 57 inmate cases, 9 staff cases, and a population of 918 inmates).) The combination of Huntington's obesity and the current conditions at FCI Allenwood Low suffice for the Court to conclude that Huntington has established an extraordinary and compelling reason for reduction in sentence.

### 2. Section 3553(a) Factors and Dangerousness

The existence of an extraordinary and compelling reason is not, however, a sufficient basis for the relief Huntington requests. Under § 3582(c)(1)(A), the Court must also consider the sentencing factors under 18 U.S.C. § 3553(a) to the extent applicable, *see United States v. Pawlowski*, 967 F.3d 327 (3d Cir. 2020), and whether the defendant would be a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g).

Section 3553(a) directs the Court to impose a sentence that is sufficient, but not greater than necessary, to further the purposes of sentencing; *i.e.*, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(D). Additionally, the Court takes into account, *inter alia*, the nature and circumstances of the offense and the defendant's history and characteristics. *Id.* § 3553(a)(1). Evaluating dangerousness under 18 U.S.C. § 3142(g) also involves, in relevant part, assessing the nature and circumstances of the

offense, the defendant's history and characteristics (including whether he was on probation at the time of the instant offense), and the "nature and seriousness of the danger to any person or the community" that would be posed by his release.

Just last year when it sentenced Huntington, the Court weighed the § 3553(a) factors and concluded that a sentence of 41 months was appropriate.  As the government observes, this sentence was at the bottom of the guidelines range of 41 to 51 months.  (D.E. 30, at 7; D.E. 25, Sent'g Tr. 10:9-14.)  Reducing it by approximately seven additional months[2] and converting that time to supervised release, which Huntington proposes be served on home confinement, would be tantamount to finding that a below-guidelines sentence is sufficient, and the Court cannot so conclude.  The nature and circumstances of both the offense and the defendant continue to warrant a 41-month sentence of incarceration.  Huntington's offense involved a loaded gun and illegal drugs that he stashed under a bush, after which he walked away; as the government notes, anyone could have picked up the contraband.  (*See* PSR ¶¶ 12-14, 44; *see also* D.E. 30, at 7.)  Relevant to both the § 3553(a) analysis and to the Court's inquiry under § 3542(g), Huntington committed that offense while on probation from an earlier drug conviction committed a little over two years before his arrest in this case.  Moreover, he was generally noncompliant with the conditions of that probation.  (PSR ¶ 44).  This history supports both the need for specific deterrence and a conclusion that his release now would present an inappropriate risk to the community.

Of further concern, Huntington proposes a release plan in vague terms and provides no supporting documentation. He says he would live with his mother and claims he has secured employment with Amazon making deliveries by truck, which he asserts "will lead to restoration of [his] driver's license."  (D.E. 26, at 9-10.)  However, the PSR – which it must be noted is

---

[2] As noted earlier, Huntington's projected release date is June 25, 2021.

relatively recent and therefore probative – indicated that Huntington has never had a driver's license (PSR ¶ 74), and it is unclear whether his mother has agreed to Huntington's proposal. Significantly, this plan would result in a scenario where Huntington's safety and that of the community would depend on his compliance with mainly self-directed measures during a public health crisis sweeping the community he proposes to return to.  The record shows that Huntington failed to abide by his earlier probation terms, which were imposed on him and legally enforceable.  Early release would rest his and others' safety on his voluntary compliance with pandemic restrictions, conduct not supported by the information before the Court.

The Court is constrained to conclude that Huntington has not met his burden of demonstrating that releasing him now, in advance of completing his sentence, is in accord with the critical portion of the analysis, consideration of the § 3553(a) factors and the required 18 U.S.C. § 3142(g) evaluation.

**V.     Conclusion**

For the reasons set forth above, Huntington's motion will be denied.  An appropriate order will issue.


Dated:  December 28, 2020                              /s/ Katharine S. Hayden
                                                       Katharine S. Hayden, U.S.D.J.